ALBANY,
January, 1828.

ADAMS
v.
FOSTER.          ADAMS & BARNUM *against* FOSTER & LAWRENCE.

After an order for the removal of a pauper from the town of *B.* to the town of *D.*, it was found, that he was too sick to be removed, he afterwards, died in *B.*, so that the order was not executed; and the town of *B.* had taken no measures, under the 16th section of the " act for the relief and settlement of the poor,"(sess.36. ch. 78. 1 *N. R. L.* 279.) against the town of *D.* to enforce, by warrant, the payment of the expense of maintaining the pauper in his sickness, and of his funeral, though a *notice* had been given by the Overseers of *B.* to the Overseers of *D.*, for that purpose: *Held,* that the Overseers of *D.*, not being aggrieved by the order or notice, within the meaning of the act, no *appeal* would lie to the *Sessions.*

IN ERROR, on *certiorari* to the General Sessions of the Peace of the county of *Franklin.* From the return to the *certiorari*, it appeared, that there was an appeal to the Court of Sessions, from the order of removal, made by two Justices of the Peace, of the town of *Bangor*, on the 2d of *May*, 1821, by which they adjudged *Cyrus Potter*, a pauper, to be legally settled in the town of *Dickenson*, and directed any constable, &c. to remove him from *B.* to *D.* At the time of making the order, the pauper was sick and lame, and it was found, that he could not be removed, without injury to his health. On the 4th of *May*, after the order was made, *Adams* and *Barnum*, Overseers of the Poor, of *Bangor*, served on *Foster* and *Lawrence*, Overseers of the Poor of *Dickenson*, a notice, in writing, of the name and circumstances of the pauper, and requesting them to take care of, relieve and maintain him during his illness, and to provide for his funeral, in case he should die in *Bangor*, pursuant to the provisions of the 16th section of the " act for the relief and settlement of the poor," passed *April* 13, 1813 ; and, also, a copy of the order of removal, with an endorsement thereon, signed by the Justices and one of the Overseers of *B.*, expressing their opinion, that the pauper could not be removed, on account of his health. The pauper was not removed under the order, but *died*, in *July* following, a charge on the town of *Bangor.* A warrant of distress was issued against *Thomas Oakes*, late Overseer of the Poor of *D.*, and one of the predecessors of *Foster* and *Lawrence*, for neglecting to provide for the pauper, after due notice for that purpose ; from which warrant, *Oakes*,

A father, who has acquired a legal settlement in a town, cannot, by any deed, release, or act of emancipation, devest his son, who has not arrived at 21, nor acquired a settlement for himself, of his right of settlement, *derived* from his father ; though the son, since such deed of emancipation, had not resided in his father's family, but had acted, in all things, for himself, and worked entirely for his own benefit.

" as late Overseer of the Poor of *D.*," appealed, on the ground, that the pauper's last legal settlement was not in *D.* And, on the 22d of *September*, 1821, *Foster* and *Lawrence*, also, appealed to the Sessions, and both appeals were entered at the *October* Sessions, at the same time.    The appellees moved to quash the first appeal, on the ground, that the order of removal had never been executed, and the pauper died before the prosecution of the appeal ; but the Court denied the motion, and the appeals came on to be heard, at the *January* Sessions, in 1822.    The appellees again moved to quash the appeal, on the ground before stated, but the motion was overruled by the Court.    On the trial before the Sessions, it was proved, that the town of *D.* formerly included within its limits what now constitutes the present towns of *D.* and *B.*    That by an act of the legislature of the 15th of *June*, 1812, the town of *D.* was divided, and a part thereof erected into a new town, by the name of *Bangor*.    The pauper was the son of *Andrew Potter*, and was of age, in *September*, 1819.    He never acquired any settlement for himself.    In 1811, the father, with his family, including the pauper, resided on a farm in the town of *D.*, in that part of it which is now included in the town of *B.*    The father was assessed for the farm in 1811, and paid the tax in the winter following, and continued to reside upon the farm, after the division of the town of *D.*, until the winter of 1813, when his wife and children, including the pauper, removed to the town of *D.*, to reside with another son of *Andrew P.*, who continued in the town of *B.*, where he worked the two following years, and was assessed and paid a tax in *B.* in 1815.    In the spring of 1816, *Andrew P.*, also, removed to the town of *D.*, where he lived with his family, upon a lot of land, for which he was assessed and paid a tax to the collector of *D.*    On the 23d of *July*, 1816, *Andrew P.* executed to his son, the pauper, a deed, by which, in consideration of fifty dollars, he released to him all the right, &c. which he, *A. P.* had, or might have, to his labour and services, until he should arrive at the age of twenty-one years, and giving him full power and license to act, in all things, for himself, &c.    It was proved, that, at the time this instrument was executed, the son lived with

one Clark, who paid the fifty dollars, mentioned in the deed, for him. The son had, for two years before, worked for himself, in different places, and, after the execution of the instrument, went into Vermont, where he remained for more than two years, when he returned to D. and lived with a brother, and worked on a piece of land of his own; but soon after returned to Vermont, where he continued until the spring or summer of 1819, when he returned to D., being sick and unable to work. He boarded some weeks with a brother, at Bangor, and sometimes with another brother, at Fort Covington, until the winter of 1821, when, being in Bangor, he, by reason of his sickness and lameness, became chargeable to that town. After the execution of the instrument, above mentioned, the pauper never resided with his father, who no longer exercised any control over him; nor did he claim or receive any part of his earnings.

The Court of Sessions quashed the order of removal, and adjudged the overseers of the town of B., to pay to the overseers of the town of D., 27 dollars and 17 cents, for the costs of the appeal.

On the return of the certiorari, Adams and Barnum, assigned for error, that the Court of Sessions allowed Foster and Lawrence to prosecute and sustain the appeal, after it was admitted, that the order of removal had never been executed, by removing the pauper to the town of D., and after it was admitted, that he died before the commencement of the appeal, when they could not be aggrieved by the order; and because, the appeal ought to have been dismissed, on the motions made by the appellees, &c. Foster and Lawrence, joined in error.

The cause was submitted to the Court, without argument.

WOODWORTH, J. delivered the opinion of the Court.

The order of removal was made under *the seventh section of the act;* but it never was carried into effect. As the pauper died, before notice of an appeal, it appears to me the town of *Dickenson was not aggrieved,* and, therefore, the order could not be the subject of an appeal. There could be no grievance to the town, to which the order of removal was

made, *until it was executed.* It is evident, that the overseers of *Bangor* intended to abandon the order; for, *two days after* it was made, they gave notice under the *sixteenth section of the act,* requiring the overseers of *Dickenson* to provide for the pauper as a sick person, unable to be removed. It is true, they served a copy of the order of removal with the notice, but this was of no avail; the respondents were not bound to take notice of it. If it is considered as *an adjudication,* which the overseers of *Bangor* might adopt, as laying the foundation for a warrant to distrain and sell the goods and chattels of the overseers neglecting to provide for the pauper, still an appeal *was premature.* No steps have been taken by *Bangor* to compel payment, and, *non constat,* that they ever will take any. The town of *Dickenson* has never been aggrieved on this account. Whenever the town of *Bangor* takes measures to enforce the payment for expenses incurred, *by warrant,* then an appeal will lie; but not before. Putting the order out of question, it will not be pretended, that an appeal would lie from the notice merely; for, although the statute directs a notice, yet, it presupposes an *adjudication,* as to the settlement, to be made before a warrant issues to compel payment. (*Voorhes* v. *Whipple,* 7 *Johns. Rep.* 94.) On the preceding grounds the appeal ought to have been dismissed.

But admitting the appeal was properly before the Court, was the settlement of the pauper in *Bangor* ?

The town of *Dickenson* was divided, on the 15th of *June,* 1812 ; previous to that time, it included the territory, *which constitutes the present towns of Dickenson and Bangor.* *Cyrus Potter,* the pauper, was twenty-one years old in *September,* 1819 ; he was the son of *Andrew Potter,* and never gained a settlement for himself.

In 1811, the pauper's father resided on a farm in that part of *Dickenson* which is now included *in Bangor,* and was assessed in that year, and paid taxes. After the division of the towns, he continued in *Bangor,* and, in 1815, was assessed, and paid taxes. In 1816 he removed to *Dickenson,* was there assessed, and paid a tax, in that year.

On the 23d of *July,* 1816, *Andrew Potter* executed to the pauper a writing for the consideration of 50 dollars, where-

by he released all claims to his services until the age of twenty-one. At this time, the pauper lived with one *Clark.* He afterwards went to *Vermont*, where he remained upwards of two years; then returned to *Dickenson*, where he remained a few weeks. After this he returned to *Vermont*, and came back in 1819, and boarded with his brother, at *Bangor*, until 1821, when he became chargeable to that town. After the execution of the writing he never resided with his father, nor returned to his house, except, a few times, on a visit, when he remained *a day or two, at a time.*

The pauper's father gained a settlement in *Dickenson*, having been *assessed and paid* taxes in that town for two years. *The eleventh section of the poor act*, directing the manner of dividing the poor, and by whom any poor person, who has gained a settlement, and becomes chargeable, shall be supported, *does not affect this question;* for the father did not gain a settlement until after *the division* of the town of *D.* The instrument relied on as an *emancipation*, is a nullity. The father could not, by such an act, devest the right of a *derivative settlement.* The cases in which an emancipation takes place, have always been decided on the circumstances *of the son's being twenty-one, or married, or having gained a settlement in his own right, or, as in the case of a soldier, having contracted a relation which was inconsistent with the idea of his being in a subordinate situation in his father's family.* (3 *Term Rep.* 356. *Rex* v. *Wilton, Burr.* S. C. 270. 1 *Strange,* 438. 831.)

We are, therefore, of opinion, that the pauper was settled in *Dickenson*, and that the order of the Court of Sessions be reversed.

Order of Sessions reversed.