ELIAS BROWER, OVERSEER OF MARLBORO, v. W. CONOVER SMITH, OVERSEER OF RARITAN.

1. The parents of a minor daughter came to this state from Ireland, and acquired a settlement in Marlboro township, Monmouth county, in 1869. They left the child in Ireland until 1872, when she was brought to her father's home, in said township, she still being under age. *Held*, that the minor also had a legal settlement in the township.

2. The provision of the first section of our poor law, (*Rev.*, *p.* 834,) that "every healthy person directly coming from Europe into this state shall be settled in the township in which he or she shall first settle and reside for the space of one year," does not apply to such persons as have acquired a legal settlement here before residing one year in any township.

On *certiorari*.

John Gilmartin and wife, natives of Ireland, came to America in 1860 from that country. In 1869, John Gilmartin gained a legal settlement in Marlboro township, Monmouth county, New Jersey, which he has retained and where he has resided ever since. When he came to this country in 1860 he left behind him in Ireland a daughter, Delia, who was born there, and who was then about two years old. Delia continued to reside in Ireland with relatives of her father until 1872, when she came to America with money furnished for that purpose by her father. She came directly from Europe to her father's residence in Marlboro, by the way of New York city and Keyport, Monmouth county, N. J. She arrived at her father's house in May, 1872. She was physically a healthy person at the time of her coming from Europe into this state as aforesaid, but weak minded. During the

time she remained in Ireland her father contributed nothing to her support. After her arrival at her father's home in Marlboro township she remained there as one of his family for two or three weeks, when she ran away and went to Raritan township, from whence her father brought her back to his house in the course of a week or two. This last-named time she remained at her father's house two or three weeks, and then again ran away and went to the said township of Raritan, and there remained for about two years. Then she was again brought back to her father's residence by her mother, and remained there for one or two weeks, when she again returned to Raritan township without her father's knowledge or consent, where she has remained the whole or great part of the time since, until she was removed to Marlboro township as a pauper as hereinafter stated.

She has never resided in Marlboro township for more than three weeks at any one time. During her absences from her father's house he had no knowledge where she was or control or management of her or her business in any way. She was supported as a pauper by the township of Raritan for nearly a year immediately preceding her removal as a pauper to Marlboro township. In February, 1883, proceedings for her removal, pursuant to the statute, were commenced by the overseer of the poor of Raritan township, before David Warner, esquire, one of the justices of the peace of Monmouth county, residing in Raritan township, which proceedings resulted in an order by the said justice of the peace, dated the 24th day of February, 1883, adjudging and determining the last legal settlement of the said Delia Gilmartin to be in the said township of Marlboro, and commanding her to be removed and delivered to the overseer of that township in the usual form. She was removed and delivered as directed by the said order on the 16th day of March, 1883, and has ever since then been and is now a charge upon the last-named township.

From the order of the justice above referred to an appeal was taken by the overseer of the poor of Marlboro township

to the Monmouth Quarter Sessions, who, on the    day of July, 1883, affirmed the order of the justice, with costs.

Delia never acquired any legal settlement in the State of New Jersey, except such as might be derived under the facts above stated.

Argued at November Term, 1883, before Justices KNAPP, DIXON and MAGIE.

For the plaintiff in *certiorari, C. Robbins.*

For the defendant, *E. W. Arrowsmith.*

The opinion of the court was delivered by

DIXON, J. The orders brought up for review in this case are right. The general rule is that the settlement of minor children follows that of their father. *Shrewsbury* v. *Holmdel,* 13 *Vroom* 373. The application of this rule is not prevented by the fact that the minor is separated from its parents' household, (*Alexandria* v. *Bethlehem,* 1 *Harr.* 119, 122, 123; *Adams* v. *Foster,* 20 *Johns.* 452,) nor by its residing in another state from that in which its parent lives and is legally settled, (*Great Barrington* v. *Tyringham,* 18 *Pick.* 264;) and on this subject foreign countries stand in the same relation to us as sister states. *Alexandria* v. *Kingwood,* 3 *Halst.* 370. This pauper, therefore, being only eleven years old in 1869, when her father gained a settlement in Marlboro, that township became then also the place of her legal settlement.

But if it were held that by being left in Ireland when her parents came to this country, she ceased to be a member of their family, and for that reason their settlement in 1869 was not then communicated to her, yet when, in 1872, her father brought her to his home in Marlboro, and she remained there " as one of his family," according to the agreed case, no circumstance was wanting, the lack of which might throw doubt upon the application of the general rule. She was a minor, unemancipated, and a member of her father's household.

Save by derivation, she then had, in the eye of our law, no settlement anywhere, for her former settlement in Ireland was deemed no settlement at all. *Alexandria* v. *Kingwood, supra.* Nothing, therefore, existed which could possibly interfere with the communication to her of her father's settlement.

It remains to inquire whether she has since gained any other settlement.

The only law under which it is claimed she could have done so is the last clause in the first section of our "Act for the settlement and relief of the poor," (*Rev., p.* 834,) originally passed March 11th, 1774, (*Pat., p.* 26,) which provides " that all mariners coming into this state, and having no settlement in this nor any of the neighboring states, and every other healthy person, directly coming from Europe into this state, shall be legally settled in the township in which he or she shall first settle and reside for the space of one year." If it be conceded that Delia Gilmartin was a healthy person, directly coming from Europe into this state, and that she first settled and resided for the space of a year in Raritan township, and so, by the strict letter of this statute, would gain a settlement there, still I think she is not within the spirit of the law. The law does not appear to me to have been designed to embrace persons having a legal settlement in New Jersey before the occurrence of the facts which, by this provision, would give a settlement. If the statute were literally enforced, Jerseymen temporarily visiting Europe would, on their return thence, obtain a new settlement in the township where they first happened to live a year. This was not the purpose of the law. Its design was to indicate how immigrants not otherwise settled might become so. This interpretation is indeed opposed by the circumstance that the same clause, in referring to mariners, *expressly* limits its own operation to those having no settlement in this or any neighboring state, and such express limitation being omitted as to immigrants, a limitation of similar effect ought not ordinarily to be implied; but since the opposite interpretation leads to results so inadmissible, I think this rule of construction must,

*pro hac vice,* be disregarded.    In the poor law of 1758, (*Allinson, p.* 222,) where, I believe, mariners and other healthy persons arriving from beyond sea are first mentioned together as a special class, they are all placed upon the same footing, and probably it was only because mariners coming into this state often had already a legal settlement here or in some neighboring state, and European immigrants very rarely had such a settlement, that any difference in express provisions concerning them was suggested.    Notwithstanding this difference, immigrants settled here without recourse to this enactment are not included within its spirit and operation.

The pauper's derivative settlement in Marlboro township therefore remains, and the orders brought up should be affirmed.